# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Gary Lee Johnson, | Case No. 20-cv-2360 (ECT/HB) |
| Petitioner, | |
| v. | **REPORT & RECOMMENDATION** |
| State of Minnesota, | |
| Respondent. | |

HILDY BOWBEER, United States Magistrate Judge

This matter is before the undersigned United States Magistrate Judge on Gary Lee Johnson's Petition for a writ of habeas corpus brought under 28 U.S.C. § 2254 (Petition [ECF No. 1]), Respondent's Motion to Dismiss the Petition [ECF No. 28], Johnson's Request to Respondents for Production of Documents [ECF No. 47] and Requests for Admissions [ECF Nos. 55, 57] (which the court construes as requests for discovery under Rule 6 of the Rules Governing Section 2254 Proceedings in United States District Courts), and Johnson's letter requests for additional time to seek new evidence [ECF Nos. 50, 51]. The Petition and Motion to Dismiss have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons set forth below, the Court recommends that the Respondent's Motion to Dismiss be granted, that Johnson's Petition be dismissed, and that his requests for discovery and additional time be denied.

I.   **Background**

On October 3, 2011, Gary Johnson was charged with seven counts of First Degree Criminal Sexual Conduct and on March 20, 2012, he pleaded guilty to three of those counts. *See State v. Johnson*, Case No. 14-CR-11-3353 (Clay Cty. Dist. Ct. 2012). On May 7, 2012, he was sentenced to 360 months in prison plus a lifetime term of conditional release, although his sentence was later corrected to a 10-year term of conditional release. (*See* R. at 15–36.)[1] Petitioner never filed a direct appeal of his convictions or sentence but pursued several attempts at collateral relief.

A.   **Johnson's Early Motions**

On November 24, 2015, more than three and a half years after pleading guilty and being sentenced on the first degree criminal sexual conduct charges, Johnson filed three motions to remove all Clay County prosecutors from his case, to recuse all Clay County District Judges, to change the venue of his case, and to lower his sentence or reopen his plea/trial. (*See id.* at 1–14.) On December 4, 2015, the Chief Judge of Clay County District Court granted the request to recuse the trial judge because she had voluntarily resigned, and denied the other relief requested as outside the scope of his authority. (*See id.* at 37–38.) On December 23, 2015, after the motions had been reassigned to a new district judge, all three motions were denied because Johnson cited

---

[1] The Respondent submitted the relevant state court record in two large PDF files with consecutive pagination across both. [*See* ECF Nos. 43–44.] All citations to the state court record—"R."—refer to the Bates numbers provided in the two PDF files. Bates numbers 1–238 are in ECF No. 43 and Bates numbers 239–431 are in ECF No. 44.

2

no authority for the relief he sought. (*See id.* at 39–40.) It appears from the record that Johnson did not appeal this decision.

On February 22, 2016, Johnson filed new motions in the Clay County District Court reiterating some of the same arguments and raising numerous additional issues with his conviction, including challenges concerning the authenticity of the evidence against him, judicial bias, ineffective assistance of counsel, and the constitutionality of his prosecution based on state and federal rules. (*See id.* at 41–139.) He sought the appointment of a new judge and prosecutor from outside Clay County, and asked the court to vacate his sentence and order his immediate release. (*See id.*) On March 1, 2016, the Chief Judge of the Clay County District Court denied Johnson's request to recuse the judge that denied his November 24, 2015, motions, and denied the balance of his remaining motions as outside the scope of the court's authority. (*Id.* at 146–48.) Soon after, Johnson filed an "Amendment to Motions." (*See id.* at 154.) The district court denied the amendment since "the matter [had] been ruled on and is closed" and informed Johnson that his proper recourse was to appeal the matter. (*Id.*) Johnson did not appeal these rulings.

      B.      **Johnson's First Petition for Postconviction Relief**

On August 1, 2016, Johnson filed his first petition for postconviction relief. (*See id.* at 155–63.) Relevant to the habeas petition before this Court, Johnson argued that: (1) he had newly-discovered evidence—including a letter in the victim's handwriting, information about the victim's age, false information in police reports and witness testimony, and alleged misconduct by police, child protection workers, and prosecutors;

3

(2) his trial counsel was ineffective for multiple reasons; (3) his appellate counsel was ineffective for advising him not to file a postconviction motion; (4) he did not receive a fair trial from an impartial judge; and (5) he was convicted using the wrong Minnesota statute based on the victim's age.  (*Id.*)  On August 25, 2016, the Clay County District Court denied Johnson's petition for postconviction relief as time-barred.  (*Id.* at 169–71.)  The court additionally found that Johnson did not qualify for an exception to the two-year statute of limitations because none of his "newly-discovered evidence" was new, and he failed to explain why it could not have been raised earlier.  (*See id.* at 170–71.)  Johnson appealed and the Minnesota Court of Appeals dismissed the appeal without prejudice because the district court administrator had not forwarded Johnson's petition to the state public defender's office as required by state law.[2]  (*See id.* at 193–95; 354–56.)

On February 2, 2017, Johnson filed a "Motion to Dismiss" in the Clay County District Court, seeking to be released and to have all charges against him dismissed.  (*Id.* at 200–02.)  Johnson alleged that his conviction was secured in violation of the Supremacy Clause and, specifically, that a proper chain of custody was not maintained for the evidence in his case and the evidence was not authenticated, contrary to Minnesota Rule of Evidence 901.  (*See id.*)  On March 7, 2017, the district court denied the motion as procedurally improper because Johnson had not filed a direct appeal of his

---

[2] The Office of the Minnesota Appellate Public Defender declined representation of Johnson in his postconviction matter in Case No. 14-CR-11-3353 because they had previously represented him in the challenge to his sentence, but agreed to evaluate the file in a related case, No. 14-CR-08-1481.  (*See* R. at 198.)

4

case and his first postconviction petition had been denied. (*See id.* at 215.) Once again, Johnson did not appeal that decision.

### C.  Johnson's Second Petition for Postconviction Relief

On June 26, 2017, Johnson filed a second petition for postconviction relief. (*Id.* at 226–38.) His second petition reiterated many of the same theories as his first, but he added that he should be allowed to retract his guilty plea because it was not accurate, voluntary or intelligently made. (*See id.*) Johnson also argued that his public defender and appellate defender both failed to adequately represent him and contended that his petition was not time-barred by the two-year rule because he had newly-discovered evidence and his claims fell within the interests-of-justice exception. (*See id.* at 236.)

The Clay County District Court denied Johnson's second petition for postconviction relief as untimely. (*See id.* at 358–60.) The court found that none of Johnson's arguments about "the victim's age, the DNA evidence, the search warrant, the credibility of statements and the conduct of the district judge who accepted his guilty plea . . . [had] anything to do with any new evidence; all were known to [Johnson] at the time of his conviction." (*Id.* at 360.) Thus, the court found that he did not qualify for an exception to the two-year time bar set by Minnesota Statute § 590.04, subd. 4. (*Id.*) The court also found that Johnson failed to submit any evidence or authority that showed his guilty plea was not knowing, intelligent and voluntary. (*Id.*) Johnson's petition was therefore denied in its entirety. (*Id.*)

On May 8, 2018, the Minnesota Court of Appeals affirmed the denial of Johnson's second petition and specifically found that he did not qualify for an exception to the two-

year filing rule because he knew of all of his claims at the time he pled guilty and the interests of justice would not be served by allowing him to challenge his conviction years later based on old evidence. (*See id.* at 361–63.)

### D. Johnson's Third Petition for Postconviction Relief

On June 26, 2018, Johnson filed a third petition for postconviction relief. (*See id.* at 364–74.) In his third petition, Johnson argued that his guilty plea was not valid because it did not establish the necessary elements of Minn. Stat. § 609.342, subd. G. (*Id.* at 365.) He also argued that his petition relied on newly-discovered evidence in the form of a case he called the "San Antonio Four." (*Id.*) On August 23, 2018, Johnson's third postconviction petition was denied by the state district court on the basis that it was untimely, the "San Antonio Four" case was not new evidence, Johnson submitted no other new evidence in support of his petition, and the petition was frivolous. (*See id.* at 375–84.)

The Minnesota Court of Appeals affirmed the denial of the Johnson's third petition. *Johnson v. State*, A18-1476, 2019 WL 1591833 (Minn. Ct. App. April 15, 2019). The appellate court found that the petition was untimely, Johnson did not proffer new evidence, his plea was not suspect, and the lower court did not err in concluding that his petition did not qualify for the interests-of-justice exception to the state statute of limitations for postconviction relief. *See id.*

### E. Johnson's Motion for Hearing/Fourth Petition for Postconviction Relief

On July 5, 2019, Johnson filed a "Motion for Hearing to Prove Jurisdiction," wherein he argued that the Clay County District Court never established jurisdiction over his criminal proceedings because he was not indicted. (*See* R. at 397–405.) Both the Respondent and the state court characterized this as a Fourth Petition for Postconviction Relief. (*See* Resp. Mem. at 6 [ECF No. 29]; R. at 419.) Johnson also argued the underlying evidence was insufficient in multiple respects. (*See* R. at 397–405.) On July 30, 2019, the state district court denied Johnson's motion as procedurally improper and time-barred. (*See id.* at 406–14.) Johnson did not appeal that decision.

### F. Johnson's Fifth Petition for Postconviction Relief

On August 28, 2019, Johnson filed a fifth petition for postconviction relief. (*Id.* at 415–17.) In the petition, Johnson argued that his conviction was invalid because his plea was not knowing and voluntary, he was not knowledgeable about the facts of his case at the time of the plea, and he did not receive competent counsel. (*Id.*) On September 18, 2019, the Clay County District Court found that all issues presented within the petition had been previously raised and rejected, and Johnson's petition was denied as frivolous and time-barred. (*See id.* at 418–19.) Although the record is incomplete on this point, it appears that Johnson appealed that decision to the Court of Appeals (*id.* at 428) and, eventually, the Minnesota Supreme Court (*id.* at 429). The record does not include the decision from the Court of Appeals, but the Minnesota Supreme Court dismissed Johnson's appeal summarily. (*Id.* at 429.)

### G. Johnson's Federal Petition for a Writ of Habeas Corpus

On November 19, 2020, Johnson filed a petition for a writ of habeas corpus in this District. (Pet. at 17.)[3] Johnson raises five claims in his Petition: (1) a letter used as evidence against him was not professionally authenticated and there was an incomplete chain of custody; (2) he received ineffective assistance of trial counsel because his lawyer lied to him about the evidence, did not object to the trial judge presiding over a related civil case, and did not supply Johnson with a complete copy of the case file; (3) he received ineffective assistance of appellate counsel because counsel told him he was guilty although the evidence suggested he was innocent; (4) the victim's statements were inconsistent and uncorroborated; and (5) Johnson's conviction was flawed because he was never indicted by a grand jury. (Pet. at 5–12.)

On April 2, 2021, Respondent filed a timely motion to dismiss. [ECF No. 28.] Johnson filed a reply memorandum on May 10, 2021. [ECF Nos. 33, 34.] Following the close of briefing on that motion, Johnson filed a motion requesting permission to file "additional authorities" "on the ground that the Minnesota Criminal District Court of Clay County did not have or properly establish legal jurisdiction to adjudicate" his case. (*See* Mot. Add'l Auth. at 1 [ECF No. 37].) The Court accepted Johnson's supplemental filings and stated that it would take them into account in its consideration of the Motion to Dismiss, but informed Johnson it would not accept further submissions on the motion. [ECF No. 40.]

---

[3] The Petition does not have an internal pagination, so the Court cites to the page numbers provided by the CM/ECF system.

Notwithstanding the Court's admonition, Johnson went on to file several additional submissions. First, on June 3, 2021, Johnson filed an additional "exhibit" with a clipping of a newspaper article from January 2021 about the sentencing of serial rapist in St. Paul, Minnesota. [ECF No. 42.] Johnson also filed a Request to Respondents for Production of Documents. [ECF No. 47.] Then, on June 9, 2021, Johnson requested additional time to investigate videos made by his "supposed friends" that Johnson believes have the ability to prove his innocence. [ECF No. 50.] On June 29, 2021, Johnson wrote to argue his innocence and request additional time to obtain an expert opinion about the physical examination done during the case investigation. [ECF No. 51.] Next, on July 12, 2021, Johnson wrote in further response to arguments Respondent had made in a prior filing and to express his skepticism that the Court would be impartial in his case. [ECF No. 54.] Finally, Johnson filed two sets of Requests for Admission directed to Respondents. [ECF Nos. 55, 57.]

## II.  Analysis

Respondent argues Johnson's Petition should be dismissed as time-barred. Under 28 U.S.C. § 2244, as amended by AEDPA, a petitioner has one year to file his petition for a writ of habeas corpus. The statute sets out four scenarios for calculating the one-year period, although only two are applicable here: Johnson's Petition was due by the latest date established by 28 U.S.C. §§ 2244(d)(1)(A) and/or (D).[4]

---

[4] Johnson does not argue, and nothing in the record suggests, that a state-created impediment prevented Johnson from filing a section 2254 petition or that a newly-recognized constitutional right made retroactive applies to his case, so sections 2244(d)(1)(B) and (C) are inapplicable.

9

Under § 2244(d)(1)(A), the limitation period begins to run on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." In Johnson's case, the trial court entered judgment in the underlying criminal matter on May 7, 2012. *See State v. Johnson*, Case No. 14-CR-11-3353 (Clay Cty. Dist. Ct. 2012). Under Minnesota law, Johnson had 90 days to file a direct appeal, i.e., on or about August 5, 2012. *See* Minn. R. Crim. P. 28.02, subd. 2(3); Minn. R. Crim P. 28.05, subd. 1(1). Johnson did not appeal his conviction and sentence within the 90-day period. Thus, under § 2244(d)(1)(A), his one-year clock for a federal habeas petition began running on August 5, 2012, and, unless tolled, expired a year later.

A properly filed application for postconviction relief in state court tolls the one-year period, *see* § 2244(d)(2), but Johnson did not even begin to pursue postconviction relief in state court until late 2015 or mid-2016. On November 24, 2015, he filed three motions in his old criminal case, all of which were denied, and on August 1, 2016, he filed his first petition for postconviction relief. These filings came more than three years after his conviction became final, so they did not toll the one-year period set by § 2244(d)(1)(A). Therefore, the one-year period prescribed by § 2244(d)(1)(A) expired on or about August 4, 2013.

Alternately, if a habeas petition alleges newly-discovered evidence, the one-year period of limitation runs from "the date on which the facts supporting the claim could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). "The factual predicate of a petitioner's claims constitutes the vital facts underlying those claims." *Earl v. Fabian*, 556 F.3d 717, 725 (8th Cir. 2009) (citation omitted). "Section

10

2244(d)(1)(D) does not convey a statutory right to an extended delay while a habeas petitioner gathers every possible scrap of evidence that might support his claim. *Id.* (cleaned up).

Here, the record does not support a finding that the factual predicate for *any* of Johnson's claims was recently discovered. Nowhere does Johnson argue that there is any newly-discovered evidence, or new science with which to analyze or interpret the existing evidence. Instead, the majority of Johnson's grounds for relief—the existence of the letter, actions of trial counsel, victim's statements, and lack of an indictment—were known to Johnson *at the time of his guilty plea*, well before the statute of limitations even began to run. Because Johnson does not offer any new evidence to this Court, § 2244(d)(1)(D) is inapplicable here.

The Court therefore concludes Johnson's petition is untimely. But Johnson argues he is innocent of the crime, and the Supreme Court has said that a "convincing showing of actual innocence" can overcome a procedural bar, such as a statute of limitations bar, to consideration of the merits of a claim. *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). The Court cautioned, however, "that tenable actual-innocence gateway pleas"— sometimes called the 'miscarriage of justice exception'—are rare: "'[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *Id.* at 386, 392 (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). Johnson therefore must offer "new reliable evidence—whether it be exculpatory

11

scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324.

The Court begins its analysis by noting that only claims related to *factual* issues—as opposed to *legal* issues—with his case may support a claim for actual innocence. *See Sawyer v. Whitley*, 505 U.S. 333, 339 (1992) ("[T]he miscarriage of justice exception is concerned with actual as compared to legal innocence. . . ."); *Pitts v. Norris*, 85 F.3d 348, 350–51 (8th Cir. 1996) (pursuing a claim of legal innocence with no new evidence to establish factual innocence is insufficient to invoke actual innocence). Certain of Johnson's claims present only legal issues. Johnson's second and third grounds for relief are based on the alleged ineffectiveness of his counsel. (*See* Pet. at 7–8.) But ineffective counsel does not offer any support either way as to Johnson's factual innocence. Likewise, Johnson's fifth ground for relief, that he was charged by a complaint rather than an indictment, is a purely legal argument that does not amount to evidence of Johnson's innocence. (*See* Pet. at 12.) Johnson also cites as a basis for his Petition a letter found in his belongings and written to the victim, which the state court "assum[ed]" was written by Johnson, but which was "not professional authenticated" and which was "unaccounted for" for 15 days before it was given to police. (*See* Pet. at 5.) But Johnson does not argue he has new evidence of the letter's actual author or provenance—he simply argues more should have been done to verify its authenticity. This, too, is a legal argument. For those claims, the actual innocence gateway is inapplicable.

To make a showing of actual innocence on his remaining claims, Johnson must offer "new reliable evidence which was not presented at trial," and "was not available at

12

trial through the exercise of due diligence." *Kidd v. Norman*, 651 F.3d 947, 953 (8th Cir. 2011). In an attempt to make that showing, Johnson looks to an excerpt from the victim's medical records. (*See* Pet.'s Mem. Resp. at 3–5 [ECF No. 34].) The one-page excerpt is undated, although it appears to have been printed on October 24, 2011, so the Court can reasonably conclude it is nearly ten years old. (Pet.'s Ex. 1 [ECF No. 36].) The excerpt appears to relate to a physical examination of the victim, which included the gathering of forensic evidence, presumably as part of the state's investigation into the alleged sexual assaults. (*See id.*) Johnson points out that the excerpt describes the victim's breasts and genitals as "Tanner IV," a description of the victim's physical development which Johnson says corresponds with her being 16–18 years old. (*See id.*; *see* Pet.'s Mem. Resp. at 3.) The excerpt also states that, at the time of the examination, the victim was 15 years and 8 months old. (Pet.'s Ex. 1.) Johnson also calls the Court's attention to various aspects of the victim's examination, such as that the victim's hymen was "well estrogenized and redundant," that there were no "lesions, scars, bruising or evidence of injury" in the victim's anal area, and that the "physical exam show[ed] no residua, either acute or chronic of sexual abuse at this time." (*See id.*; Pet.'s Mem. Resp. at 4, 11.) Johnson argues this evidence supports his claim that he is innocent of the sexual assaults to which he pleaded guilty.

    Even if the evidence cited by Johnson could be characterized as suggestive of actual innocence, the Court need not assess the merits of the evidence because it is not new evidence, as is required to make a claim of actual innocence. *Schlup*, 513 U.S. at 324. In his memorandum, Johnson states that the "above mentioned factual undisputed

evidence was discovered in 2015." (Pet.'s Mem. Resp. at 7.)  He also acknowledges that he raised the issue in a "postconviction filing and the postconviction court determined the case was frivolous." (*Id.*)  The record itself indicates it was printed in October 2011, the same month Johnson was charged.  (Pet.'s Ex. 1.)  There is therefore no basis for an argument that the facts revealed in the victim's physical examination are 'new.'  *See Kidd v. Norman*, 651 F.3d at 953 (actual innocence requires a petitioner "come forward not only with new reliable evidence which was not presented at trial but to come forward with new reliable evidence which was not available at trial through the exercise of due diligence"); *Buermann v. Roy*, Case No. 15-cv-3964 (JRT/FLN), 2016 WL 4179868, at *2 (D. Minn. Aug. 8, 2016) (petitioner must present "new evidence not present at the original trial").

Elsewhere Johnson asserts that other evidence supports his claim to factual innocence, such as DNA analysis of swabs of his and the victim's genitals or evidence that the victim's testimony was "uncorroborated and coerced." (*See* Pet.'s Mem. Resp. at 5, 11, 13; Mot. Add'l Auth. at 5–6.)  Johnson does not provide this evidence to the Court and, more importantly, does not give the Court any indication that it is "new."  Instead, the record of the state court decisions reveals that both "facts" were known to Defendant years ago, and several were known at the time of his guilty plea.  Defendant was aware of the issue of the DNA analysis at least as early as February 17, 2016, when he raised it in his motion to have certain prosecutors on the case removed. (*See* R. at 64.)  He then continued to raise the issue in later filings. (*See id.* at 174, 201–02, 230–32, 370.)  Likewise, Defendant has repeatedly argued since at least November 2016 that the

victim's testimony was not credible and/or that it was coerced. (*See id.* at 181, 231, 237, 392.) Accordingly, these assertions do not support a finding of actual innocence.

The Court finds that Johnson's Petition is untimely under 28 U.S.C § 2244(d)(1)(A), and none of the statute's other subsections are applicable here. Furthermore, Johnson's claim that he can overcome the procedural bar of the statute of limitations with new evidence of actual innocence must be rejected because he does not produce, or even allege the existence of, new evidence in this case. Therefore, this Court recommends that Respondent's Motion to Dismiss be granted and that Johnson's habeas Petition be dismissed.[5]

## III.   Johnson's Requests for Discovery and Additional Time

As previously noted, after the motion to dismiss was fully briefed, Johnson continued to submit various documents, letters, and motions seeking further discovery and time to investigate his claims. Although a motion for discovery can be pursued under

---

[5] In his response to the motion to dismiss, Johnson insists that because he is claiming actual innocence this Court must hold an evidentiary hearing on his petition. (Pet.'s Mem. Resp. at 1.) Johnson is incorrect. Under Section 2254(e), the court need only hold an evidentiary hearing in limited circumstances. An evidentiary hearing is warranted if a claim relies on (1) a new rule of constitutional law that is retroactive on collateral review and was previously unavailable or (2) a new factual predicate that could not have been discovered earlier via due diligence, and if the facts underlying the claim would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense. 28 U.S.C. § 2254(e)(2). Since Johnson is not arguing a new rule of constitutional law, the only circumstances under which this Court would have needed to consider holding an evidentiary hearing is if Johnson had presented a new factual predicate that could not have been discovered earlier *and* if he had proffered facts showing by clear and convincing evidence that no reasonable factfinder would have found him guilty had a constitutional error not occurred. As the foregoing discussion shows, neither of these conditions was met.

Rule 6 of the Rules Governing Section 2254 Proceedings in United States District Courts, this Court finds that in light of the recommended disposition of the Petition, discovery is not warranted. Therefore, this Court recommends that Johnson's Request to Respondent for Production of Documents [ECF No. 47], his letters asking for additional time for discovery and investigation [ECF Nos. 50, 51], and his two sets of Requests for Admissions [ECF Nos. 55, 57] be denied.

## IV. Certificate of Appealability

Finally, a § 2254 habeas corpus petitioner cannot appeal an adverse ruling on his petition unless he is granted a certificate of appealability ("COA"). *See* 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA cannot be granted unless the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In this case, it is highly unlikely that any other court, including the Eighth Circuit Court of Appeals, would treat Johnson's current habeas corpus petition differently than it is being treated here. Johnson has not identified, and this Court cannot discern, anything novel, noteworthy, or worrisome about this case that warrants appellate review. It is therefore recommended that Johnson not be granted a COA in this matter.

## V. Conclusion

Accordingly, based on all the files, records, and proceedings herein **IT IS HEREBY RECOMMENDED** that:

1. The Respondent's Motion to Dismiss [ECF No. 28] be **GRANTED**;

2. The Petition [ECF No. 1] be **DISMISSED**;

3. Johnson's requests for discovery [ECF Nos. 47, 55, 57] and his letters seeking additional time to conduct discovery and further investigation [ECF Nos. 50, 51] be **DENIED**;

4. No certificate of appealability be issued.

Dated: August 10, 2021                              *s/ Hildy Bowbeer*_____
                                                    Hildy Bowbeer
                                                    United States Magistrate Judge